IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 07-00403-01-CR-W-NKL |
| LUCIA GUROLLA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**TO ACCEPT DEFENDANT'S GUILTY PLEA**

On April 29, 2008, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

*I. BACKGROUND*

On December 5, 2007, an indictment was returned, charging Defendant with, inter alia, one count of conspiracy to distribute methamphetamine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. A change-of-plea hearing was held on April 29, 2008. Defendant was present, represented by retained counsel David Johnson. The government was represented by Assistant United States Attorney Charles Ambrose. The proceedings were recorded and a transcript of the hearing was filed on April 30, 2008.

*II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and

the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case

2

and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 2).

2. On December 5, 2007, an indictment was returned charging Defendant with, inter alia, one count of conspiracy to distribute methamphetamine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. The court read this charge against Defendant and Defendant indicated she understood the nature of the charge (Tr. at 3-4).

3. The statutory penalty is not less than ten years but not more than life imprisonment, a fine of not more than $4,000,000, a supervised release term of not less than five years, and a $100 mandatory special assessment fee (Tr. at 4-5). Defendant was informed of the penalty range and indicated that she understood (Tr. at 4-5).

4. Defendant was advised of the following:

   a. That she has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 5);

   b. That she has the right to assistance of counsel throughout the trial (Tr.

at 5-6);

  c. That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 6);

  d. That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 5-6);

  e. That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 6-7);

  f. That Defendant has the right to subpoena witnesses to testify on her behalf (Tr. at 7); and

  g. That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 7-8).

5. Defendant was informed and understood that by pleading guilty, she was giving up all of the rights described above (Tr. at 9).

6. Defendant was informed that during the change-of-plea proceeding, she would be placed under oath and questioned by counsel and the judge (Tr. at 9). Defendant was further informed that she must answer questions truthfully while under oath (Tr. at 9). Defendant stated that she understood (Tr. at 9).

7. There has been open file discovery in this case (Tr. at 9).

8. Defense counsel stated that he had reviewed the government's file and confirmed from his own independent investigation that it was wise for his client to plead guilty (Tr. at 10).

4

9. If this case were to go to trial the government's evidence against Defendant would reveal that an undercover officer from the Jackson County Drug Task Force and a confidential witness made a total of four controlled buys of methamphetamine from co-defendant Miles in early 2007 (Tr. at 10-11). Defendant was seen arriving and supplying methamphetamine to co-defendant Miles prior to two of these buys (Tr. at 11). A search warrant was executed at the residence Defendant and co-defendant Miles shared (Tr. at 11). Officers recovered a substantial quantity of methamphetamine and marijuana in the residence, as well as a large sum of cash (Tr. at 11). Specifically, officers found more than three kilograms of marijuana in Defendant's bedroom closet (Tr. at 15). Co-defendant Miles admitted that all of the methamphetamine she sold to the undercover officer had been supplied by Defendant (Tr. at 11). In October of 2007, as part of a separate drug-trafficking investigation, Kansas City, Missouri Police Officers performed a consensual search of Defendant's residence (Tr. at 11). Another large quantity of marijuana and approximately $12,700 were found in the course of that search (Tr. at 11, 15). All of the drugs tested positive for marijuana and methamphetamine, respectively (Tr. at 12).

10. Defendant was placed under oath (Tr. at 10). Defendant admitted that sometime between January 1, 2007 and November 1, 2007, she had an agreement with co-defendant Miles concerning the distribution of drugs (Tr. at 13). Such agreement involved at least 50 grams or more of methamphetamine (Tr. at 13).

Defendant stated she possessed methamphetamine between January and March of 2007 (Tr. at 18). At times, co-defendant Miles asked Defendant to give her methamphetamine to sell to other people (Tr. at 18). After doing so, co-defendant Miles would give Defendant money (Tr. at 18-19). Additionally, Defendant knew there was marijuana in her house and also that the

5

marijuana would be sold by other people to drug users (Tr. at 19, 25, 27-29). Defendant stated she did not personally sell the marijuana, but knew it was there, provided a storage place, and discussed it being sold; she firmly believed marijuana was being trafficked in the house (Tr. at 19, 25, 27-29). She also used the marijuana with co-defendant Miles and others (Tr. at 21). Defendant believed she was guilty of the conspiracy to distribute marijuana because she conspired with co-defendant Miles and others to sell marijuana by giving them a place where they could base their sales of operation (Tr. at 29).

Defendant further stated she knew co-defendant Miles kept money in her safe (Tr. at 20).

11. Defendant indicated that she understood the plea agreement she had with the government (Tr. at 30-35). As part of the agreement, Defendant agreed to plead guilty to Count One and concede the forfeiture of property; in exchange, the government agreed to dismiss Counts Two, Seven and Eight at the time of sentencing (Tr. at 3, 31, 33).

12. No one had made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 35).

13. Defendant is satisfied with the representation she has received from Mr. Johnson (Tr. at 35). There is nothing he has done that Defendant did not want him to do, and there is nothing she wanted him to do that he has not done (Tr. at 35-36).

14. Defendant is forty-seven years old and completed the eleventh grade (Tr. at 36). She did not have any difficulty understanding what went on during the change of plea hearing and had not encountered any difficulty communicating with Mr. Johnson (Tr. at 36). Defendant did not have any physical or mental health concerns that would prevent her from entering an intelligent and voluntary plea of guilty to this charge (Tr. at 39-37). She was not under the influence of drugs or

Case 4:07-cr-00403-NKL   Document 53   Filed 05/02/08   Page 6 of 7

anything else that would cloud her ability to intelligently waive her right to a jury trial (Tr. at 37).

15. Defendant tendered a plea of guilty to Count One of the Indictment (Tr. at 37-38).

## V. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for conspiracy to distribute controlled substances include: (1) there was an agreement to distribute the controlled substance; (2) the defendant knew of the agreement; and (3) the defendant intentionally joined the conspiracy. United States v. Savatdy, 452 F.3d 974, 977 (8th Cir. 2006); United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995).

## V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having her plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of Count One of the Indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of Count One of the Indictment.

                                                                                                                /s/ Robert E. Larsen
                                                                                                                ROBERT E. LARSEN
                                                                                                                United States Magistrate Judge

Kansas City, Missouri
May 2, 2008